1

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

2

_____

3    United States of America,        ) Criminal Action
                                       ) No. 1:19-cr-00382-KBJ
4                      Plaintiff,      )
                                       ) **Plea and Sentencing**
5    vs.                               ) (via Zoom)
                                       )
6    Ryan Cooper,                      ) Washington, D.C.
                                       ) **April 30, 2021**
7                      Defendant.      ) Time:  2:30 p.m.

8    _____

            **Transcript of <u>Plea and Sentencing</u>** (via Zoom)
9                        **Held Before**
        **The Honorable Ketanji Brown Jackson** (via Zoom)
10                **United States District Judge**

11

                     A P P E A R A N C E S
12

     For the Government:       **Nicholas G. Miranda**
13   (via Zoom)                UNITED STATES ATTORNEY'S OFFICE
                               FOR THE DISTRICT OF COLUMBIA
14                             555 Fourth Street, Northwest
                               Washington, D.C. 20001
15

     For the Defendant:        **Jonathan Jeffress**
16   (via Zoom)                KAISER DILLON, PLLC
                               1099 14th Street, Suite 800 West
17                             Washington, D.C. 20005

18   Also Present (via Zoom):
                               Kelli Willett, Probation Officer
19   _____

20   Stenographic Official Court Reporter:
     (via Zoom)                Nancy J. Meyer
21                             Registered Diplomate Reporter
                               Certified Realtime Reporter
22                             333 Constitution Avenue, Northwest
                               Washington, D.C. 20001
23                             202-354-3118

24

25

1             P R O C E E D I N G S

2             (REPORTER'S NOTE:  This hearing was held during the
   COVID-19 pandemic restrictions and is subject to the
3  limitations of technology associated with the use of
   technology, including but not limited to telephone and video
4  signal interference, static, signal interruptions, and other
   restrictions and limitations associated with remote court
5  reporting via telephone, speakerphone, and/or
   videoconferencing.)

6

7             THE COURTROOM DEPUTY:  Your Honor, this is Criminal

8  Case 19-382, United States of America v. Ryan Cooper.

9             Starting with government, I'm going to ask counsel to

10 please identify themselves for the record, as well as the

11 probation officer.

12            MR. MIRANDA:  Good afternoon, Your Honor.  Nicholas

13 Miranda for the United States.

14            THE COURT:  Mr. Miranda.

15       Mr. Jeffress, I think you're still on mute.

16            MR. JEFFRESS:  John Jeffress on behalf of Mr. Cooper,

17 Your Honor, who is present on the video.

18            THE COURT:  Mr. Jeffress.  I do see Mr. Cooper.

19            MR. JEFFRESS:  Thank you.

20            THE COURT:  And we have Ms. Willett as well.

21            THE PROBATION OFFICER:  Good afternoon, Your Honor.

22            THE COURT:  Good afternoon, on behalf of probation.

23       It's the Court's understanding that the purpose of

24 Mr. Cooper's virtual appearance in court here today is to enter

25 a plea of guilty and to be sentenced.

1          Mr. Jeffress; is that correct?

2           MR. JEFFRESS:  Yes, that is, Your Honor.

3           THE COURT:  All right.  Before we proceed, I do need

4  to acknowledge that we are proceeding by videoconference

5  technology because we're only in Phase 2 of our plan for

6  reopening as a court, and we've been open for only limited

7  proceedings in light of the pandemic circumstances.

8          Chief Judge Beryl Howell has issued a standing order

9  that authorizes this Court to use videoconference technology

10  for certain proceedings during this phase of reopening with

11  consent from the defendant and when further delay would cause

12  serious harm to the interests of justice.

13          So let me start by confirming with Mr. Cooper that he

14  consents to proceed by videoconference today.  Mr. Jeffress, is

15  that so.

16          Sorry.  Again, you're on mute.

17           MR. JEFFRESS:  That is correct, Your Honor.  Yes.

18           THE COURT:  All right.  Thank you.

19          So this Court does find that it is in the interests of

20  justice to proceed with today's plea and sentencing hearing via

21  remote technology.  The Court also finds that any further delay

22  would result in serious harm to the interests of the defendant

23  and the public.

24          So let me also just reiterate what you may have been

25  told previously by my clerk.  I'm reminding everyone that

1    recording or rebroadcasting today's proceeding is prohibited,

2    and please do mute your devices when you are not speaking.

3          Mr. Cooper, let me start by explaining to you what is

4    going to happen.  This hearing will proceed in two parts.

5    First, I'm going to review with you the terms of your plea

6    agreement to make sure that you understand the rights that

7    you're waiving, and I'll give you an opportunity to enter a

8    plea of guilty, if that's what you decide to do.

9          Second, we will proceed to the actual sentencing

10   hearing.  If you decide to plead guilty, we've agreed to go

11   directly to sentencing, and I will explain each step of that

12   hearing before we begin it.

13         Do you have any questions at this point, sir?

14              THE DEFENDANT:  No, Your Honor.  Thank you.

15              THE COURT:  All right.  So before we proceed any

16   further, let me have -- Ms. Franklin, if you could please

17   administer the oath to the defendant.

18              THE COURTROOM DEPUTY:  Mr. Cooper.

19              (Oath administered.)

20              THE DEFENDANT:  I do, ma'am.

21              THE COURTROOM DEPUTY:  Thank you, sir.

22              THE COURT:  All right.  Mr. Cooper, you are now under

23   oath.  I must ask you certain questions in order to ensure that

24   you understand your rights and to ensure that this plea is

25   knowing and voluntary.  Do you understand that if you do not

1    answer my questions truthfully, you could be prosecuted for

2    perjury or for making a false statement, and any false answers

3    you give here could be used against you in that prosecution?

4    Do you understand that?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  Mr. Cooper, the purpose of this plea

7    hearing this afternoon is for you to make a decision whether

8    you want to go to trial on the government's charges against you

9    or whether you want to enter a plea of guilty.  In order to

10   make that very important decision, it is vital that you

11   understand everything that's going on here and everything that

12   I will be explaining to you.  If you do not understand

13   something, please tell me, and I will try to explain it in a

14   different fashion, a clearer fashion, or I'll let you stop and

15   talk to your counsel.  We can arrange that even through video

16   technology if you-all wanted to mute and call each other or

17   something of the sort.

18         All right.  Do you understand?

19              THE DEFENDANT:  I do, Your Honor.

20              THE COURT:  I'm now going to ask you a series of

21   questions, and you will need to answer them truthfully as you

22   agreed to do when you took the oath.

23         What is your full name?

24              THE DEFENDANT:  My name is Ryan Manning Cooper,

25   Your Honor.

1    THE COURT:  And how old are you, Mr. Cooper?

2    THE DEFENDANT:  I am 30 years of age, Your Honor.

3    THE COURT:  And how far did you go in school?

4    THE DEFENDANT:  The highest degree I achieved is

5  bachelor's, through the George Washington University, Your

6  Honor.

7    THE COURT:  So you can read and write?

8    THE DEFENDANT:  I can, Your Honor.

9    THE COURT:  Where were you born, Mr. Cooper?

10    THE DEFENDANT:  In Concord, New Hampshire,

11  Your Honor.

12    THE COURT:  In the last 48 hours, have you taken any

13  alcohol or drugs or any medicine that could affect your ability

14  to understand what we're doing -- what you're doing here by

15  pleading guilty?

16    THE DEFENDANT:  I had alcoholic beverages last

17  evening and a goodbye celebration with my friends, but it does

18  not impair my ability to understand these proceedings.

19    THE COURT:  All right.  Thank you.

20    Are you currently undergoing any treatment for any kind

21  of mental illness or emotional disturbance or addiction to

22  narcotic drugs of any kind?

23    THE DEFENDANT:  Yes, Your Honor.  I currently see two

24  therapists.  One is a sex offense treatment provider,

25  Jean-André Constant, who has provided letters to the Court, as

1    well as Michael Giordano, who is a certified sex therapist and

2    LICSW, who I've been seeing for -- each for roughly two years.

3             THE COURT:  All right.  And does -- does this

4    treatment have any influence over or otherwise impact your

5    decision to plead guilty here today?

6             THE DEFENDANT:  No, it has no bearing on my decision

7    today.

8             THE COURT:  Are you completely satisfied with the

9    services of your lawyer, Mr. Cooper?

10            THE DEFENDANT:  Yes, Your Honor.

11            THE COURT:  And have you had enough time to talk with

12   your attorney and to discuss the charges and this plea offer

13   and whether or not you should accept it?

14            THE DEFENDANT:  Yes, I have, Your Honor.

15            THE COURT:  Have you received a copy of the criminal

16   information pending against you?  Those are the written charges

17   that were made against you in this case.

18            THE DEFENDANT:  Yes, Your Honor.

19            THE COURT:  And have you read those charges and fully

20   discussed them with your counsel?

21            THE DEFENDANT:  I have, Your Honor.

22            THE COURT:  Let me turn to counsel for both the

23   government and defense and ask if you have any question as to

24   the defendant's competence to plead guilty at this time.

25            Mr. Jeffress?

1          Sorry, sir.  You're going to have to --

2          MR. JEFFRESS:  No, Your Honor.  Thank you.

3          THE COURT:  All right.  Mr. Miranda?

4          MR. MIRANDA:  No, Your Honor.

5          THE COURT:  Okay.  Based on the answers that have

6   been provided here, I find that the defendant is fully

7   competent and capable of entering an informed plea.

8          Now, Mr. Cooper, I need to explain to you certain rights

9   that you have with respect to this matter, and I need to find

10  out whether you understand those rights.  Please listen

11  carefully to my questions and be sure to let me know if there's

12  anything you do not understand.  And, again, if we need to stop

13  and let you talk to your counsel, we can do that.

14         Under the terms of the plea agreement, you will plead

15  guilty to an information that charges you with one count of

16  distribution of child pornography in violation of 18 U.S.C.

17  § 2252(a)(2).  Do you understand that you have the right to a

18  grand jury indictment?  In other words, you've been charged

19  with a felony, and the government ordinarily would have to

20  convince 12 grand jurors that there is probable cause that this

21  crime was committed and that you committed it before the

22  government could proceed with its case.  Do you understand that

23  you have the right to that sort of grand jury indictment?

24         THE DEFENDANT:  Yes, I do understand that,

25  Your Honor.

1          THE COURT:  And do you give up this right?

2          THE DEFENDANT:  Yes, I do, Your Honor.

3          THE COURT:  All right.  I believe that you have

4   signed a waiver of indictment, which I have here before me, and

5   given your representation, I will sign the waiver of indictment

6   as well.

7          Mr. Cooper, before you plead guilty, you need to know

8   that you have the right to plead not guilty and to have a jury

9   trial in this case.  That means that 12 citizens of the

10  District of Columbia would come into the courtroom, would

11  listen to the evidence that is presented, and would determine

12  your guilt or innocence based on that evidence.  Do you

13  understand that you have a right to a jury trial?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  If you had a trial, you would have the

16  right to be represented by your lawyer at that trial and at

17  every other stage of these criminal proceedings; and, if

18  necessary, you'd have the right to have the Court appoint

19  counsel for you at no cost to you.  Do you understand that?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  If you had a trial, you would have the

22  right through your lawyer to confront and cross-examine any

23  witnesses against you.  Do you understand that?

24          THE DEFENDANT:  I do, Your Honor.

25          THE COURT:  If you had a trial, you would have the

1    right to present your own witnesses and the right to subpoena

2    them, to require them to testify in your defense.  You would

3    also have the right to testify and present evidence on your own

4    behalf if you wanted to.  Do you understand that?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  Do you also understand that you would not

7    have to testify or present any evidence at trial if you did not

8    want to because the defense cannot be forced to present

9    evidence in a criminal case, and the fact that you chose not to

10   testify or present evidence could not be used against you?  Do

11   you understand that?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  Do you understand that unless and until I

14   accept your guilty plea, you are presumed by the law to be

15   innocent because it is the government's burden to prove your

16   guilt beyond a reasonable doubt?  And until it does, you cannot

17   be convicted; do you understand that?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  Do you understand that if you plead

20   guilty in this case and if I accept your guilty plea, you will

21   give up all of the rights that I just explained to you and

22   there will be no trial?

23             THE DEFENDANT:  Yes, I understand, Your Honor.

24             THE COURT:  Do you understand that if you went to

25   trial and if you were convicted, you would have a right to

1    appeal your conviction to the Court of Appeals and the right to

2    have a lawyer help you prepare that appeal?

3            THE DEFENDANT:  Yes, I understand, Your Honor.

4            THE COURT:  Do you understand that by pleading guilty

5    you are generally giving up your right to appeal your

6    conviction of guilt in this case?

7            THE DEFENDANT:  Yes, Your Honor.

8            THE COURT:  Do you also understand that by pleading

9    guilty you're giving up your right to appeal the sentence you

10   receive, except under the limited circumstances outlined in

11   your plea agreement?

12           THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  Excuse me.  Your plea agreement expressly

14   reserves for you the right to appeal the sentence despite your

15   guilty plea to the extent that the Court sentences you above

16   the statutory maximum or guidelines range determined by the

17   Court and if you contend that there is ineffective assistance

18   of counsel.  But that's it.  You would only have the right to

19   appeal the sentence in those two circumstances because you are

20   agreeing not to raise other issues in this plea agreement.  Do

21   you understand that?

22           THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Do you also understand that by pleading

24   guilty you are giving up certain procedural challenges related

25   to your conviction?  These are challenges that you might

1    otherwise be able to make down the line in subsequent

2    proceedings if your conviction is later vacated for some reason

3    or your guilty plea was withdrawn.

4         So, for example, in the plea agreement, you specifically

5    give up your ability to challenge venue, which is the place

6    that the government has chosen to bring this case, and it's the

7    District of Columbia.  You give up your ability to raise the

8    defense of statute of limitations if your conviction is vacated

9    and the government seeks to prosecute you again at a later

10   date.  And you also give up the protection against

11   self-incrimination and any limitations on the government's use

12   of statements that you may have made during plea negotiations

13   if your plea is ultimately withdrawn.

14        I want you to understand that by pleading guilty,

15   pursuant to this plea agreement, you are giving up your right

16   to raise these kinds of defenses and issues later on if

17   something happens to your plea or conviction.  Do you

18   understand this?

19        THE DEFENDANT:  Yes, I do, Your Honor.

20        THE COURT:  All right.  Mr. Cooper, ordinarily

21   defendants who wish to challenge their conviction and sentence

22   can file an appeal and can make arguments about defects in the

23   prosecution or sentence until the case has reached the end of

24   the appeals process.  A defendant's conviction and sentence is

25   considered final when it's been fully appealed, but there are

1    also certain types of challenges that a defendant can

2    ordinarily bring after his or her conviction or sentence have

3    become final.  These are called collateral attacks on the final

4    conviction of sentence, and they include habeas petitions.

5         Under this plea agreement, you're waiving your right to

6    bring collateral attacks on your conviction and sentence once

7    they have become final.  Do you understand that you're giving

8    up the right to file a habeas petition or bring any other

9    collateral attack against your conviction or sentence at a

10   later date, except in certain circumstances listed in your

11   agreement?

12        I've looked at your agreement.  It appears that you

13   would have the right to bring such a petition or motion to seek

14   to change the conviction or sentence in only three

15   circumstances:  if that motion is based on newly discovered

16   evidence, if you claim that you've received ineffective

17   assistance of counsel, or if you file a motion for a

18   modification of the sentence brought under a statutory

19   provision that allows for such modifications.  And that is

20   listed in your plea agreement.

21        Those are the only circumstances in which you can file a

22   collateral attack on your conviction or sentence.  Do you

23   understand that?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  Do you also understand that by pleading

1  guilty to a felony offense you may later be deprived of

2  valuable civil rights, such as the right to vote, the right to

3  hold public office, the right to serve on a jury, and the right

4  to possess any kind of firearm?

5          THE DEFENDANT:  I do understand, Your Honor.

6          THE COURT:  All right.  Mr. Cooper, having discussed

7  these rights with you, do you still want to continue on the

8  path toward pleading guilty today, which would result in your

9  giving up the right to a trial and all of the rights I've just

10  explained that you would have if your case went to trial?

11          THE DEFENDANT:  I do wish to proceed, Your Honor.

12          THE COURT:  All right, sir.  We will proceed.

13      Let me turn to Mr. Miranda.  I'm going to ask you a

14  specific question about the plea negotiations in a minute; but,

15  first, if you would please state and describe the elements of

16  the charge to which the defendant will be pleading guilty.

17          MR. MIRANDA:  Yes, Your Honor.  Yes, Your Honor.

18  The -- the defendant will be pleading guilty to one count of

19  distribution of child pornography in violation of 18 U.S.C.

20  2252(a)(2).  That offense has four elements.  The first is that

21  the defendant knowingly distributed any visual depiction; the

22  second, that he did so using any means or facility of

23  interstate or foreign commerce or that has been shipped or

24  transported in or affecting interstate of foreign commerce by

25  any means, including by computer; the third is that the

1    production of such visual depiction involves the use of a minor

2    engaging in sexually explicit conduct; and fourth, that such

3    visual depiction is of that said conduct.

4         THE COURT:  All right.  Thank you.

5         Mr. Cooper, let me ask you if you understand the charge

6    against you in this case as the prosecutor has just described

7    it.

8         THE DEFENDANT:  Yes, Your Honor.

9         THE COURT:  All right.

10        Mr. Miranda, let me just confirm that this plea

11   agreement reflects the only formal plea offer that was made to

12   the defendant in this case.

13        MR. MIRANDA:  Yes, Your Honor.

14        THE COURT:  All right.

15        Mr. Cooper, do you have a copy of the current plea

16   agreement?

17        THE DEFENDANT:  Not in front of me, Your Honor.  I

18   apologize.

19        THE COURT:  That's all right.  But have you read it?

20        THE DEFENDANT:  Yes, I have, Your Honor.

21        THE COURT:  And did you understand it?

22        THE DEFENDANT:  I did, Your Honor.

23        THE COURT:  And have you had enough time to talk to

24   your lawyer about it?

25        THE DEFENDANT:  Yes, I have, Your Honor.

16

1          THE COURT:  So you know that as part of the plea

2   agreement, your lawyer and the prosecutor have given me a

3   document called the statement of offense, which describes what

4   the government would be prepared to prove at trial about your

5   criminal conduct.  Have you read that document and discussed it

6   fully with your lawyer?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Does the statement of offense truly and

9   accurately describe what you did in this case?

10          THE DEFENDANT:  It does, Your Honor.

11          THE COURT:  Did you, in fact, post images depicting

12   child pornography on your Tumblr blog?

13          THE DEFENDANT:  Yes, I did, Your Honor.

14          THE COURT:  Okay.

15      Mr. Jeffress, let me have you briefly summarize the

16   terms of the plea agreement.

17      MR. JEFFRESS:  Yes, Your Honor.  Under the plea

18   agreement, as Mr. Miranda stated, there's -- there's one count.

19   There will be no other charges against Mr. Cooper in connection

20   with the conduct described in the statement of offense.

21      There's a mandatory minimum sentence for distribution of

22   child pornography of 5 years.  Maximum is life.  The -- sorry.

23   And Mr. Cooper understands the guideline range, which I know

24   the Court will get to.  I have reviewed that with him.

25      Mr. Cooper understands what Your Honor said about under

1    very limited circumstances -- except for very limited

2    circumstances, he's waiving his right to appeal.

3         Obviously, he's waiving his right to a trial and all

4    associated rights, including his right to cross-examine

5    witnesses, to either testify or to not testify under the

6    Fifth Amendment.  I think those are the critical points,

7    Your Honor.

8         THE COURT:  All right.  And you've gone over it with

9    him --

10        MR. JEFFRESS:  Yes, Your Honor.

11        THE COURT:  -- the document?

12        MR. MIRANDA:  Your Honor, I'm sorry.  If I may

13   just -- I just wanted to make one correction for the record.

14   The maximum penalty for distribution of child pornography

15   statutorily is 20 years.

16        THE COURT:  Twenty years.  Thank you, Mr. Miranda.

17        And I will be going over those penalties, and in the

18   plea agreement, at least, the -- the estimated sentencing

19   guideline range is 151 months to 188 months, but there is a

20   statutory minimum penalty of 60 months, as Mr. Jeffress

21   indicated.

22        All right.  Let me ask, Mr. Cooper, whether you have any

23   confusion or questions about the plea agreement.

24        THE DEFENDANT:  No, I understand it completely,

25   Your Honor.

1    THE COURT:  And, Mr. Jeffress, the consideration, I

2    guess, is the government's willingness to allocute -- to

3    capping its sentencing allocution.  I believe there was a

4    provision about that in the plea agreement.  Is that -- is that

5    your understanding?

6    MR. JEFFRESS:  Yes, Your Honor.

7    THE COURT:  Okay.  Let me also ask about forfeiture.

8    Mr. Cooper, are you aware that there is a provision in the plea

9    agreement that relates to forfeiture, that you're agreeing to

10   forfeit the silver Apple MacBook Pro?

11   THE DEFENDANT:  Yes, Your Honor.

12   THE COURT:  All right.  The Court accepts that this

13   plea agreement is of the type authorized by the Federal Rules

14   of Criminal Procedure and, in particular, Rule 11, insofar as

15   it specifies that the government will not bring other charges

16   and that the government will not ask for more punishment than

17   the bottom of the guidelines range.

18   Mr. Cooper, have you and your lawyer talked about

19   sentencing and about how the statutes and sentencing guidelines

20   may apply in your case?

21   THE DEFENDANT:  We have, Your Honor.

22   THE COURT:  Do you understand that if I accept your

23   guilty plea in this case, you could receive a maximum sentence

24   of up to -- of 20 years of imprisonment?

25   THE DEFENDANT:  Yes, Your Honor.

1        THE COURT:  It is important that you understand that

2   I can never sentence you to more than the statutory maximum

3   term of imprisonment.  Are you aware that under the statutes

4   probation is not available for this offense?

5        THE DEFENDANT:  Yes, Your Honor.

6        THE COURT:  Do you understand that there is a

7   statutory minimum sentence for a conviction under 18 U.S.C.

8   §2252(a)(2) and that that minimum sentence is 5 years or

9   60 months in prison?  Do you understand that?

10        THE DEFENDANT:  I understand that, Your Honor.

11        THE COURT:  And this is a mandatory minimum sentence,

12   which means that the Court must sentence you to at least

13   5 years.

14        Do you also understand that you must be subjected to a

15   period of supervised release?  That means that when you are

16   sent to prison, then upon your release, you would be under the

17   supervision of the probation office and expected to follow

18   certain conditions and rules that you'll have to comply with,

19   and if you violate any of those conditions, you could be sent

20   back to prison for an additional period of time?  Do you

21   understand the concept of supervised release?

22        THE DEFENDANT:  I do understand, Your Honor.

23        THE COURT:  All right.  Under the law, there are

24   minimum and maximum terms of supervised release.  By statute,

25   the minimum is 5 years, and the maximum is life.

1        There's also a maximum fine in this -- applicable to

2    this conviction of $250,000.  Mr. Cooper, do you understand

3    that you will have to pay a special assessment of $100 to the

4    Clerk of the Court?

5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  Do you also understand that you'll be

7    required to register as a sex offender?  I believe the statutes

8    require that you register for a minimum of 25 years and that

9    if you fail to comply with the registration requirements,

10   you could be prosecuted for a failure to register, which

11   carries a potential 10-year term of imprisonment.  Are you

12   aware of that?

13           THE DEFENDANT:  I'm aware of that, Your Honor.

14           THE COURT:  I mentioned already that you are

15   consenting to forfeiture of property, and you had indicated

16   that you understand that you'll have to forfeit the silver

17   Apple MacBook Pro.

18       Let me ask about restitution.  Do you understand as part

19   of your sentence the Court can order you to pay restitution to

20   any victim of your offense for any damage done as a result of

21   this crime?

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  Specifically, it appears -- and counsel

24   can correct me if I'm wrong -- that the Court has an obligation

25   to determine whether mandatory restitution applies in this case

```
1    and, if so, in what amount; is that correct?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  All right.  So let me ask, Mr. Cooper, do

4    you understand that there may be a restitution order that

5    applies to the circumstances in this case?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Also, under the terms of the plea

8    agreement, in order to facilitate the collection of any

9    financial obligations, you expressly authorize the

10   United States Attorney's Office to obtain a credit report, to

11   evaluate your ability to meet any financial obligations, and

12   you certify -- or will have to certify that you have made no

13   transfer of assets or that you will not make any such transfer

14   until your financial obligations have been satisfied in full.

15   Are you aware of these requirements that you're agreeing to in

16   your plea agreement?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  Are you also aware that under the terms

19   of the plea agreement, you're agreeing to provide certain

20   information to the government, including a completed financial

21   statement on a disclosure form that either has been or will be

22   provided to you and that any willful or -- willful falsehood on

23   that statement could be prosecuted as a separate crime?  Do you

24   understand that?

25             THE DEFENDANT:  Yes, Your Honor.
```

1          THE COURT:  Mr. Miranda, let me ask you about

2     restitution.  In a case such as this, there are times in which

3     the government has already identified victims concerning the

4     child pornography.  Is this one of those cases?  Do you

5     anticipate that there will be potential identification?

6          MR. MIRANDA:  So, yes, Your Honor.  This is a case

7     where there have been particular victims identified through the

8     ordinary course; that is, through the submission of images to

9     the NCMEC, to the National Center for Missing and Exploited

10    Children.  However, Your Honor, all of the children that we

11    were able to identify, in sending the victim letters to their

12    attorneys that were on record, we have not had any requests for

13    restitution from those attorneys.

14         So while there are identified victims, we have not had

15    restitution requests.  So because we have not had restitution

16    requests, we are not seeking restitution at this time.

17         THE COURT:  All right.  So thank you.  That was

18    helpful for the record.

19         So there's not a basis for the Court to issue such an

20    order at this time.  Presumably if those circumstances change,

21    you'll be notifying both the Court and the defendant?

22         MR. MIRANDA:  Of course.

23         THE COURT:  All right.

24         Mr. Cooper, in determining your sentence with respect to

25    Count 1, the Court is obligated to calculate and consider the

1     applicable sentencing range recommended in the *Guidelines*

2     *Manual* for your offense and for a person who has a similar

3     criminal history.  Imposing a sentence in accordance with the

4     *Guidelines Manual* is no longer mandatory, but the guidelines

5     must still be calculated and considered in every federal

6     criminal case.

7              Have you and your attorney talked specifically about the

8     federal sentencing guidelines and how they might apply in your

9     case?

10                 THE DEFENDANT:  Yes, we have, Your Honor.

11                 THE COURT:  The government and your attorney have

12    stated in the plea agreement what they estimate your guideline

13    range to be under the *Guidelines Manual*, and have you discussed

14    those particular estimations with your attorney?

15                 THE DEFENDANT:  Yes, Your Honor.

16                 THE COURT:  Do you understand that the Court's

17    guideline calculation may lead to a sentencing range that is

18    different from these estimates?

19                 THE DEFENDANT:  I do, Your Honor.

20                 THE COURT:  Do you also understand that even after

21    the Court has calculated the guidelines and decided what the

22    advisory guideline range is, the Court will determine what the

23    sentence is going to be and it has the authority to impose a

24    sentence that is more severe or less severe than the sentence

25    recommended by the guidelines?  Do you understand that?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Do you understand that you cannot

3    withdraw your guilty plea after sentencing simply because you

4    don't like or you disagree with the sentence that is ultimately

5    imposed in your case?

6          THE DEFENDANT:  I do understand, Your Honor.

7          THE COURT:  In determining the sentence to be

8    imposed, the Court must not only consult the guidelines, it is

9    also obligated to consider other sentencing factors Congress

10   has laid out in a statute that is found at Title 18 of the

11   United States Code §3553(a).  This statute requires judges to

12   consider the nature and circumstances of the offense and the

13   history and characteristics of the defendant.  Also, the Court

14   must consider the need for the sentence imposed to reflect

15   various purposes of punishment, such as the seriousness of the

16   offense, to promote respect for the law, to provide just

17   punishment for the offense, to afford adequate deterrence, to

18   protect the public, and so on.

19        Do you understand, Mr. Cooper, that this Court can and

20   must consider all of the factors in §3553(a) when it selects a

21   sentence?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Do you also understand that under some

24   circumstances the government may have the right to appeal any

25   sentence that the Court imposes if the government does not like

1  that sentence?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Do you understand that parole has been

4  abolished for federal charges; so that if you're sentenced to

5  prison, you will serve the sentence that the Court imposes with

6  a possible reduction for good time, but you would not be

7  released early on parole, as used to be the case?

8          THE DEFENDANT:  That is understood, Your Honor.

9          THE COURT:  I'm going to repeat one question,

10  Mr. Cooper, because it is -- it is very important.  Do you

11  understand that if the sentence in this case ends up being more

12  severe than you expect, you will still be bound by your guilty

13  plea and will have no right to withdraw it?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  All right.  My final set of questions in

16  the plea phase of this proceeding have to do with the

17  voluntariness of this plea.  Mr. Cooper, has anyone forced,

18  threatened, or coerced you in any way into entering this plea

19  of guilty?

20          THE DEFENDANT:  No, Your Honor.

21          THE COURT:  Has anyone, including your attorney, the

22  police, the prosecutor, or any other person you've come into

23  contact with since your arrest, promised or suggested to you

24  that merely because you're pleading guilty the Court will give

25  you a lighter sentence?

1          THE DEFENDANT:  No, Your Honor.

2          THE COURT:  Do you understand that the agreement

3    reached in this case resulted from negotiations between your

4    attorney and the government's attorney?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Has anyone made any promises to you in

7    connection with your guilty plea other than those contained in

8    the plea letter or stated in open court here today?

9          THE DEFENDANT:  No, Your Honor.

10         THE COURT:  Other than what was stated in the plea

11   letter, has anyone made any promises to you as to what sentence

12   the Court might impose if it accepts your guilty plea?

13         THE DEFENDANT:  I beg your pardon, Your Honor.  Any

14   promises regarding sentences?

15         THE COURT:  Correct.

16         THE DEFENDANT:  No, no one has made any

17   representations of that nature, Your Honor.

18         THE COURT:  All right.  Mr. Cooper, are you entering

19   this plea of guilty voluntarily and of your own free will

20   because you are guilty and for no other reason?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  Is there anything that you do not

23   understand about this proceeding or about your plea in this

24   case?

25         THE DEFENDANT:  I understand everything completely.

1    Thank you, Your Honor.

2              THE COURT:  Is there anything you want to ask me or

3    your lawyer before you enter your plea?

4              THE DEFENDANT:  I have no questions at this time,

5    Your Honor.

6              THE COURT:  So are you now ready to say whether you

7    want to plead guilty or go to trial on the charges in this

8    case?

9              THE DEFENDANT:  I am prepared to plead guilty,

10   Your Honor.

11             THE COURT:  And so that -- let me say it again in a

12   different way.

13             THE DEFENDANT:  Sure.

14             THE COURT:  What do you want to do, Mr. Cooper?

15             THE DEFENDANT:  I would like to enter my plea, Your

16   Honor.

17             THE COURT:  And you'd like to plead guilty?

18             THE DEFENDANT:  Yes, I would like to plead guilty,

19   Your Honor.

20             THE COURT:  All right.  I am satisfied that the

21   defendant is fully competent and capable of entering an

22   informed plea, making a decision today that he understands the

23   nature of his -- of the charges and the consequences of this

24   plea, that the plea of guilty is knowing and voluntary, and

25   that he's acting of his own free will in pleading guilty.  I'm

1    also satisfied that there's an adequate factual basis for each

2    of the essential elements of the offense in support of this

3    plea.

4        Therefore, the guilty plea is entered, and the defendant

5    is now adjudged guilty of the charged offense.

6        I will sign and date the waiver of trial by jury form,

7    which the defendant, defense counsel, and the Assistant

8    United States Attorney have already signed.

9        All right.  We did discuss forfeiture.  Mr. Cooper is

10   consenting to forfeiture of property.

11       Mr. Miranda, do I need to make any findings regarding

12   forfeiture --

13            THE DEFENDANT:  Yes, Your Honor.  Of course.

14            THE COURT:  -- under these circumstances?

15            MR. MIRANDA:  I don't believe so, Your Honor.  The

16   statement of offense that he's agreed to explicitly states the

17   role of the forfeited -- the forfeited device that is the

18   computer in the commission of the offense.  That is, the child

19   pornographic images were found on that computer.  So I think

20   that should satisfy requirements.

21            THE COURT:  All right.  So I will leave it there.

22       So having accepted Mr. Cooper's plea of guilty regarding

23   one count of distribution of child pornography in violation of

24   18 U.S.C. § 2252(a)(2), we will now move on to sentencing.

25       The Court has received and reviewed various documents

1    that have been submitted by the probation office and counsel in

2    advance of the hearing.  I reviewed the presentence report and

3    sentencing recommendation of the probation office, the

4    government's sentencing memoranda, and the defendant's

5    sentencing memorandum, which includes exhibits.  It appears

6    that the parties have engaged in the process of reviewing and

7    revising the presentence report and that the final report is

8    complete.

9         Mr. Cooper, this portion of today's hearing will

10   essentially proceed in three steps.  The first step is for the

11   Court to determine what sentencing guidelines and sentencing

12   range applies to your case, and I do this by looking at facts

13   in the record concerning criminal history and any mitigating or

14   aggravating factors that may warrant departure in the

15   sentencing *Guidelines Manual* after I've determined what the

16   base guideline offense is -- guideline range is.

17        The second step is to hear from the government, from any

18   victims, from your counsel, and from you, if you wish to be

19   heard, about the sentence in this case.

20        And the last step requires the Court to fashion a just

21   and fair sentence in light of the factors that are laid out in

22   the sentencing statute, 18 U.S.C. §3553(a).  As part of this

23   last step, the Court will actually impose the sentence, along

24   with other required consequences of this federal offense.

25        Now, I lay out the steps as I have with you because I do

1    realize that it's sometimes hard for nonlawyers to follow some

2    of the more mechanical processes, procedures that we have to

3    follow at sentencing.  But as you listen, it is important for

4    you, Mr. Cooper, to keep in mind why we are here at this moment

5    and the gravity of this situation.

6            You have committed and pled guilty to conduct that

7    constitutes a federal crime.  Today's proceeding is a serious

8    matter because it is fundamentally about the consequences that

9    you will have to face as a result of your decision to engage in

10   criminal behavior in violation of federal law.

11           So let's begin with the first step.  The final

12   presentence report was filed on May 12th, 2020.  Let me just

13   double-check that date.  Yes.  And the probation office's

14   sentencing recommendation was also filed on May 12th, 2020.

15   Let me ask government counsel if the government has any

16   objection to any of the factual determinations that are laid

17   out in the presentence report?

18           MR. MIRANDA:  No, Your Honor.

19           THE COURT:  All right.  Before I ask the same of the

20   defense, Mr. Cooper, let me ask you if you are still satisfied,

21   fully satisfied, with your attorney in this case.

22           THE DEFENDANT:  I am, Your Honor.

23           THE COURT:  And have you had enough time to talk with

24   him about the probation office's presentence report and the

25   papers that were filed by the government in connection with

1    this sentencing?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  All right.  Mr. Jeffress, have you and

4    your client read and discussed the presentence report?

5              MR. JEFFRESS:  Yes, Your Honor.

6              THE COURT:  And are there any disputed issues of fact

7    concerning that report?

8              MR. JEFFRESS:  None.

9              THE COURT:  So hearing no objection, the Court will

10   accept the factual recitation in the presentence report

11   regarding the circumstances of the offense and the defendant's

12   history and characteristics.  And, therefore, those facts, as

13   stated in the presentence report, will be the Court's findings

14   of fact for the purpose of this sentencing.

15           Now, let me just grab my *Guidelines Manual* -- excuse me.

16   The presentence report lays out the probation office's

17   calculation of the advisory guideline range, and that

18   calculation was done using the 2018 *Guidelines Manual*.

19           And it is as follows:  Beginning with the guideline

20   offense level, the applicable guideline in this case is 2G2.2.

21   And it has a base offense level of 22 under the circumstances

22   presented in this case.  According to the presentence report,

23   five specific offense characteristics apply:  a 2-level

24   increase under 2G2.2(b)(2) because the material involved a

25   prepubescent minor under the age of 12 years; a 2-level

1    increase under 2G2.2(b)(3)(F) because the defendant knowingly

2    engaged in the distribution of child pornography; a 4-level

3    increase under 2G2.2(b)(4) because the defense -- excuse me --

4    the offense involved material portraying a sadistic or

5    masochistic conduct; a 2-level increase under §2G2.2(b)(6)

6    because the offense involved the use of a computer or an

7    interactive computer service for the possession, transmission,

8    receipt, or distribution of the material; and a 5-level

9    increase under 2G2.2(b)(7)(D) because the offense involved 600

10   or more images of child pornography.

11       The government has also represented that Mr. Cooper has

12   demonstrated acceptance of responsibility in a manner that

13   entitles him to a 2-level reduction under §3E1.1(a) and that he

14   timely notified the government of his intention to plead guilty

15   in a manner that entitles him to an additional 1-level

16   reduction under 3D1.1(b).

17       When I get to a discussion of variances, I will discuss

18   my policy disagreement with the guidelines concerning a couple

19   of these offense levels.  This is sort of standard in my own

20   analysis of child pornography offenses.  But prior to the

21   consideration of any departures or variances, it appears as

22   though Mr. Cooper's total offense level is 34.

23       At this point, is there any objections to the

24   calculation of the offense level?

25            MR. JEFFRESS:  No, Your Honor.

1          MR. MIRANDA:  No, Your Honor.

2          THE COURT:  Sorry.  Mr. Jeffress?

3          MR. JEFFRESS:  No, Your Honor.

4          THE COURT:  Mr. Miranda?

5          MR. MIRANDA:  No, Your Honor.

6          THE COURT:  Okay.  Turning to the applicable criminal

7     history category.  The presentence investigation has found that

8     Mr. Cooper has no prior convictions that receive any criminal

9     history points in the *Guidelines Manual*, and he, therefore, has

10    zero criminal history points.  This puts him in Criminal

11    History Category I.

12          Are there any objections to the criminal history

13    calculation, Mr. Miranda?

14          MR. MIRANDA:  No, Your Honor.

15          THE COURT:  Mr. Jeffress?

16          MR. JEFFRESS:  No, Your Honor.  That's correct.

17          THE COURT:  So given the criminal history of I and an

18    adjusted offense level of 34, we're beginning under the

19    guidelines with a range of 151 to 188 months of imprisonment.

20          Did I get that right, Mr. Miranda?

21          MR. MIRANDA:  Yes, Your Honor.

22          THE COURT:  And, Mr. Jeffress?

23          MR. JEFFRESS:  We certainly agree.

24          THE COURT:  All right.  So that is the applicable

25    guideline range prior to departures and variances.

1          Now, the next step is for the Court to consider any

2     departures.  The presentence report does not include any

3     departure grounds.  Neither party appears to have mentioned

4     any, perhaps pursuant to the terms of the plea agreement.  But

5     let me just give the parties a chance to address departures as

6     distinguished from variances.

7          Is there any basis for a departure that the parties wish

8     to assert?

9          Mr. Miranda?

10          MR. MIRANDA:  No, Your Honor.

11          THE COURT:  Mr. Jeffress?

12          MR. JEFFRESS:  No, Your Honor.

13          THE COURT:  Sorry?

14          MR. JEFFRESS:  No, Your Honor.

15          THE COURT:  No.  Okay.

16          Section 3553 requires the Court to consider a variety of

17     factors, including the sentencing guidelines range, which I

18     have just discussed, and also the applicable penal statutes.

19     So at this point in my sentencing, I typically take a moment to

20     describe, generally, the applicable statutory and guideline

21     penalties for the offense of conviction.

22          As I advised you earlier, Mr. Cooper, the charge of

23     distribution of child pornography in violation of 18 U.S.C.

24     § 2252(a)(2) carries a statutory maximum penalty of 20 years of

25     imprisonment.  It also carries a statutory mandatory minimum

1    sentence of 5 years of imprisonment.  Mr. Cooper is not

2    eligible for probation under the applicable statutory

3    provisions and guidelines.

4         If a term of imprisonment is imposed, the statute

5    provides that Mr. Cooper faces a supervised release range

6    following imprisonment of at least 5 years, and under the

7    guidelines, that range is 5 years to life.

8         The statute of conviction sets a maximum fine of up to

9    $250,000, while the guideline fine range is between $35,000 and

10   $350,000.

11        The defendant is also obligated to pay a $100 special

12   assessment.

13        The statutory and guideline restitution provisions also

14   require defendants to pay restitution.  We previously discussed

15   that at this point there is no restitution obligation because

16   no request has been submitted.  The PSR states that any

17   restitution requests received will be filed with the Court by

18   the United States Attorney's Office under separate cover.

19        So let me ask the parties if I have stated accurately

20   the statutory guideline framework under which we are operating.

21        Mr. Miranda?

22        MR. MIRANDA:  Yes, Your Honor.

23        THE COURT:  Mr. Jeffress?

24        MR. JEFFRESS:  Yes, Your Honor.

25        THE COURT:  All right.  So before I discuss the

1    sentencing factors that will bear on my final decision, we've

2    reached the stage in which the parties have the opportunity to

3    address the sentencing guideline calculation or the Court's

4    considerations under 3553(a).

5            So let me start with Mr. Miranda, to ask if the

6    government would like to speak about the application of the

7    factors or anything else at this point?

8                    MR. MIRANDA:  Yes, Your Honor.  Just briefly.

9                    THE COURT:  You may begin.

10                   MR. MIRANDA:  Thank you, Your Honor.

11           I understand that Your Honor has received and has

12   reviewed the government's sentencing memorandum, and I will not

13   merely repeat what is already in that.  I just wanted to

14   highlight a couple of things, briefly, and then explain the

15   particular sentence requested from the government.

16           First, as to the specific offense in this case,

17   Your Honor, it was not a one-time distribution.  It was

18   multiple instances over a period of time.  There were,

19   depending on how you consider or divide it, at least two

20   distinct periods of time of distribution using two different

21   Tumblr account names.

22           There were -- between those, there were approximately

23   between three- and four-dozen total images that were posted.

24   What is different, to some extent, from this -- in this case

25   from the prototypical case, Your Honor, is that these images

1    were not posted to an entirely private group or amongst other

2    people but, rather, broadly posted in an area in Tumblr, in

3    which they were, perhaps, broadly accessible to individuals,

4    including children, who could find it.  And given the nature of

5    the offense and where they were posted, there is obviously no

6    way to determine how many people did see it or the nature of

7    the people who did see it, but it is not a closed universe, as

8    is often the case.

9         The second thing that I just wanted to highlight,

10   Your Honor, is that as stated in the statement of offense, that

11   when his device was -- his devices were found, including the

12   computer, within the computer and on an untitled folder were

13   many, many, many videos, and the nature of the videos is

14   described in the statement of offense, as well as in -- as well

15   as in the sentencing memorandum.  However, the nature of these

16   videos went beyond mere child pornography.  And I don't mean to

17   make light of the content of any child pornography, but rather

18   to say that the content of that -- of those videos is on the

19   more egregious or extreme spectrum of the child pornography

20   videos that are encountered in these cases.

21             THE COURT:  All right.  I'm sorry.

22             MR. MIRANDA:  No, no, no.  I was just going to say,

23   that's -- and so that is all that I wanted to highlight as

24   to -- as to the nature of the offense itself.  I just wanted to

25   highlight a couple of things as to the particular sentence.

```
 1          I'm sorry.  Did Your Honor have a question?
 2          THE COURT:  I just had a question.  So you say two
 3   periods using two Tumblr accounts, but they were within a
 4   matter of months, were they not?  We're not talking about years
 5   or anything?
 6          MR. MIRANDA:  No, no, no.  We're not.  We're not,
 7   Your Honor.  But I just -- but what I mean to say is that they
 8   are two distinct periods.  And I -- and I understand that he's
 9   pleading guilty to -- to one offense, but there -- it would
10   support the charging of two distinct distribution of child
11   pornography offenses.  It is not one continuing course of
12   conduct over a period of weeks.  There were certainly -- not to
13   get into charging terms, but there was certainly a clear break
14   or fork in the road with a different account in a totally
15   distinct period of time that was some weeks later.
16          THE COURT:  All right.  Thank you.
17          MR. MIRANDA:  And, Your Honor, just as to the
18   particular -- as to the particular requested offense --
19   allocution.  And, Your Honor, in this case the government is
20   recommending a sentence of 72 months.  As Your Honor is well
21   aware from our discussion, that is substantially below the low
22   end of the guideline -- of the applicable guideline range as
23   just determined by Your Honor.
24          The reason for the 72 months, as laid out in -- in
25   these -- in the sentencing memorandum is, first, Your Honor,
```

1    the -- the government believes that more than a mandatory

2    minimum sentence is warranted due to the distinct periods of

3    child pornography and the -- in particular, the nature of the

4    child pornography contained itself.

5            I understand from my experience before Your Honor,

6    Your Honor's objection -- policy objections to the -- to the

7    2G2.2 sentencing guidelines.  And what I will say is, although

8    this was not the basis, is that if the -- if Your Honor were

9    simply to vary and to consider solely the -- solely the base

10   offense level of 22, as well as the particular egregious nature

11   of the -- of the videos themselves, that is the -- in

12   particular, the 4-point specific offense characteristic for the

13   containing of sadomasochistic or infant/toddler, Your Honor.

14           And to discount or to vary so as not to consider any

15   other of the potential specific offense characteristics so that

16   this -- in that circumstance, it would just be 22 plus 4 for

17   this sadomasochistic.  So that would be 26.  That would place

18   his guideline range at 63 to 78 months.  And the government's

19   requested sentence of 72 months would be near the midpoint of

20   that range.

21           And with that, I would also say, Your Honor, so as --

22   with regard to the factor of not creating sentencing

23   disparities -- or at least attempting to be consistent with

24   that, Your Honor, the -- there -- it is always a little bit

25   difficult to find cases that are on all fours, as there are --

1   as these cases tend to be very fact-specific with regard to

2   number of images, nature of images, obviously criminal history,

3   and other factors.

4        However, I just would point out, Your Honor, that the --

5   the three most recent cases that I'm aware of -- that is,

6   *United States v. Bennett*, *United States v. McGarrah,*

7   *United States v. McCarty*.  *United States v. Bennett* was a case

8   before Judge Sullivan.  And these are all distribution or

9   receipt cases, Your Honor, without any hands-on, so to speak,

10  without any evidence of physical contact, without any evidence

11  of hands-on physical, sexual abuse.  In the *United States v.*

12  *Bennett*, the defendant received a sentence of 71 months by

13  Judge Sullivan.

14        In *United States v. McGarrah*, the defendant received a

15  sentence of 72 months from Judge Bates, and in *United States v.*

16  *McCarty*, the sentence -- the defendant received a sentence of

17  88 months.  I do want to point out, Your Honor, that

18  *United States v. McCarty* is a little -- is different due to the

19  criminal history of Mr. McCarty, so it is not directly

20  comparable.  But the government --

21        THE COURT:  Do you know if any of these defendants

22  had the kinds of mitigating mental health issues that are

23  arising in this case?

24        MR. MIRANDA:  I -- all three of those happen to be my

25  cases, as is about 90 percent of the cases -- of these types of

1    cases in this jurisdiction are.  I don't want to go into the

2    private mental health nature of them.

3           I -- I will say, Your Honor, that they are not the same.

4    But in each of those cases, as is common, there were mental

5    health considerations that were present and presented by

6    defense counsel, but they were not of the exact same nature as

7    in this case, Your Honor.

8           THE COURT:  Thank you.

9           MR. MIRANDA:  And with that, Your Honor, the

10   government just would rest on its written submission.

11          THE COURT:  Thank you, Mr. Miranda.

12        Mr. Jeffress.

13          MR. JEFFRESS:  Thank you, Your Honor.

14          Your Honor, at first I would like to introduce all the

15   supporters for -- of Mr. Cooper who are here virtually today on

16   the line.  As Your Honor knows, we submitted 42 letters to

17   Your Honor as part of our sentencing memorandum and our other

18   submissions.  I understand that 38 of Mr. Cooper's friends and

19   family are -- are on -- actually on the line today, right now,

20   listening to the sentencing.  They're from all over the

21   country.

22          I think from the materials that we've submitted, that

23   Your Honor can see that Mr. Cooper -- it is very clear that --

24   that throughout his life, Mr. Cooper has met and touched the

25   lives of a lot of people.  And our sentencing memo, I think,

1    spells that out, how he's done that with people, really, from

2    all walks of life and in all different phases of his life.

3         You know, from -- I think one of the examples that

4    particularly touched me was the busboy at Sequoia, when

5    Mr. Cooper was the assistant general manager there, who

6    suffered a workplace accident, and he only spoke Spanish.

7    Mr. Cooper went well above and beyond his duties to -- going to

8    the hospital and making sure that -- you know, the fact that

9    Mr. Cooper who speaks Spanish and is bilingual -- was able to

10   make sure that he was taken care of and that everything was

11   done for him.  And, you know, this is somebody who really

12   wouldn't have had anybody there necessarily to fight for him.

13        But then it goes to people who have known Mr. Cooper for

14   his entire life, who he grew up with, who he went to high

15   school with.  Many members of Mr. Cooper's family are on the

16   line today, including his grandmother.

17        You know, I've been working for Mr. Cooper for two years

18   now, and ever since -- I think the search warrant was -- was

19   executed in February of 2019.  So I've gotten -- I've had the

20   pleasure of knowing him a lot less length of time than all the

21   people on the line today.  But what I've seen and I think what

22   he's shown to the Court and to the government -- you know, he

23   personally met with Mr. -- Mr. Miranda's predecessor at the

24   office and other people there -- is that, you know, he is doing

25   everything he is -- possibly could do.  I've never seen a

1    defendant do more to account for his conduct, to take

2    responsibility for it, and then, most importantly, I think to

3    make sure that nothing like this ever happens again.

4         And I -- I think what he has done has shown to the

5    Court -- so the Court can have a hundred percent certainty of

6    two things:  And one is that this -- he will never appear in

7    front of a court again, at least not in any kind of bad context

8    like this; and the other is that 60 months is a more than

9    sufficient sentence to serve the goals of sentencing.

10        The offense -- the 3553 factors, you know, the offense

11   conduct is, of course, very serious, and no one knows that more

12   than Mr. Cooper.  He did not only -- he did not -- he viewed

13   illegal images.  He also, as Mr. Miranda noted, reposted the

14   images on Tumblr.

15        Now, the case does not involve any hands-on or travel or

16   any of the chats with other people about -- about these --

17   these types of activities.  Even in terms of the images, it

18   does not involve the dark web.  It does not involve a paid

19   website.  It does not involve any kind of secret website or

20   membership website or anything like that.  These were all

21   available images from the open internet and Mr. Cooper

22   reposted.

23        And then for that, his potential sentence, of course,

24   goes from probation -- being probation-eligible for possession

25   to the mandatory minimum of 5 years, which is a very serious

1      sentence.

2           I actually think what Mr. Miranda said about the fact

3      that these images were posted publicly where almost anyone can

4      see them, I think that cuts both ways.  I think that it is, of

5      course, extremely irresponsible and extremely dangerous.  But

6      on the other hand, I think it's a function of the mental health

7      issues that Mr. -- very serious mental health issues, which

8      we'll talk more about in a moment, which Mr. Cooper was

9      experiencing.

10          Nobody who was in their right mind, who was not in the

11     deep depression and suffering from the very serious mental

12     health issues that Mr. Cooper was experiencing at that time,

13     would do something like that.  And I think if this would have

14     been conducted and engaged in secretively amongst a group of

15     people or something like that, I think the government actually

16     would be pointing at that as an exacerbating or aggravating

17     circumstance as a reason to impose a higher sentence.

18          Now, turning to the mitigating circumstances and

19     Mr. Cooper's positive characteristics.  This case has as much

20     to say as, I think, any I've ever seen.  Mr. Cooper is an

21     extremely bright, extremely industrious, and probably the, most

22     of all, extremely kind and extremely generous young man who has

23     been faced with a truly significant number of severe challenges

24     in what is still a very young life.

25          And I do want to thank the government and Mr. Miranda

1   for recognizing this because I think they do recognize this in

2   their sentencing recommendation, which is below the guidelines,

3   and I think -- also think Ms. Willett, the probation officer

4   who has looked at the totality of circumstances.  Obviously

5   Ms. Willett is very experienced in these cases, as Mr. Miranda

6   is, and recognize that -- that, you know, there are many

7   mitigating circumstances here, and the probation office's

8   recommendation to the Court of a 60-month sentence.

9        And I think that -- also looking at the comparable

10   sentences, which Mr. Miranda referred to, I actually disagree.

11   I think the Court's colleagues in circumstances -- and this

12   Court, in similar circumstances where there are -- there is

13   conduct, there is distribution conduct, but there is also any

14   number of mitigating circumstances.  And, again, I would submit

15   that this case has, more than any of those cases -- have

16   consistently given the mandatory minimum of 60 months.  We've

17   cited all those cases in our memo, but I think the Court's

18   colleagues -- this is, I think, what -- this -- the judges on

19   this court have been doing in cases like this.  And I don't

20   think there's much variation from that.

21        And I know that this Court has, I think, concurred

22   with -- with its judicial colleagues in the *Hess* case, the

23   *Brian Hess* case, which was very similar in terms of the number

24   of images and also resulted in -- and also -- it was also a

25   guidelines range of 151 to 188 months and also resulted in a

1    sentence -- mandatory minimum sentence of 60 months.

2         I -- I don't want to belabor the challenges that

3    Mr. Cooper has faced in terms of his mental health and the

4    victimization that he suffered, both in high school and in

5    college, because those things are terrible, and they're very

6    difficult to talk about.  I know that Mr. Cooper -- I know the

7    Court has already read about them both, you know, in all the

8    expert reports that we submitted and the letters that we

9    submitted, and, of course, Mr. Cooper's letter and -- it was

10   addressed to the Court.

11        I -- I do think that the history of victimization and

12   the mental health aspects are the two explanatory factors for

13   this case.  They're why Mr. Cooper is here today.  I -- the --

14   I think the -- the -- this is a case where the reason that he

15   is here before is no longer in him.  The causes of it are the

16   mental health piece and overcoming the trauma he suffered

17   himself, and he has made tremendous progress in the last two

18   years towards doing those things.

19        And the best part about this case, I think, for

20   everybody, including all of those on the phone line and for me

21   and for him, is that we don't have to worry so much about him,

22   because when he -- he will be fine.  I don't think -- the more

23   problem is -- is that the people who love him and who are on

24   the line today are going to lose him for 4 years.  Hopefully

25   they'll be able to stay as close -- or 4-plus, whatever the

1    Bureau of Prisons does if he gets the sentence we're

2    requesting.  But that, you know, they will lose him for that

3    time.  It will be hard to stay in touch, and so we just hope

4    that it goes as quickly as possible.

5          So I -- I want to finish, Your Honor, before Mr. Cooper

6    addresses the Court, with just one more thing.  And -- and that

7    is the remorse.  I've just never seen a person earnestly

8    wrestle with the harm that he caused more than Mr. Cooper has.

9    You know, what I want the Court to know is the honest and --

10   the self-examination he's engaged in is -- is not because -- I

11   know it's not because, you know, we told him to.  It's not

12   because his -- his psychologist told him to.  That -- I wish

13   that was the case.  I wish we could tell somebody, you need to

14   go really think about what you did and -- and, you know, and --

15   and get to the right place, but it doesn't really work that

16   way.

17         The reason why Mr. Cooper has made so much progress is

18   because it's a natural outgrowth of who he is.  He has honestly

19   and -- and, you know, very painfully reflected on what he has

20   done, and he has done -- and he has come to the exact right

21   conclusions about it.  And that is why I'm a hundred percent

22   sure he will not be in this position again.

23         So with that, Your Honor, I know Mr. Cooper also wants

24   to address the Court.

25              THE COURT:  Thank you, Mr. Jeffress.

1          Mr. Cooper, if you would like to say anything that you

2     would want the Court to consider before imposing sentence, now

3     would be the time.

4          THE DEFENDANT:  Thank you, Your Honor, for affording

5     me the opportunity to address the Court today.

6          Candidly, I am wracked with guilt, shame, and so much

7     sorrow for the crime that I have committed.  And I am so sorry

8     to the victims and survivors of the images and videos that I

9     possessed and reblogged on Tumblr because I participated in a

10    market that made the depictions of their abuse they suffered as

11    innocent children, essentially, permanently available so long

12    as they continue to be distributed.

13         If I could go back in time with that sort of

14    understanding and enlightenment that I have now and erase it

15    from history, know that I would do it in a second, but I can't.

16    And that's why I'm here today, to answer for my unlawful

17    conduct.

18         Before I continue, I would like to express my sincere

19    thanks to the law enforcement officials, as well as the

20    officers of the court who are involved in my case.  I have been

21    treated with nothing but the utmost respect and dignity.  And I

22    also want to express my sincere apologies to all of those

23    mentioned people as well, because they're only involved because

24    of my poor decision-making.

25         After two years of introspection, I no longer recognize

1  the 27-year-old Ryan who committed this offense.  On the one

2  hand, that Ryan had a lot of doors opened for him.  The sky was

3  the limit.  He was working at one of the top data visualization

4  and analytics companies in the world who would've happily

5  retained him for life, and he they, but that's where the

6  positives end.  That Ryan threw it all away.

7      Twenty-seven-year-old Ryan believed that no one loved

8  him, that affection was conditional.  Twenty-seven-year-old

9  Ryan isolated himself as a consequence of trauma and

10  disbelieving who he could trust, and he did not seek or receive

11  adequate mental health care treatment.  And 27-year-old Ryan

12  ultimately made an unthinkable aberrant decision to reblog

13  images of child abuse.

14      This Ryan, who addresses the Court today, now a month

15  into 30, is damaged and world-weary, are to be certain, but

16  also all the richer in different ways.

17      I now have the previously unfathomed appreciation of

18  what unconditional love means.  The outpouring of support and

19  the number of people who have stood by my side, despite the

20  severity of my offense, have proven that I have never been

21  alone.  I am and always have been surrounded by people who love

22  me.  I have never been closer with my parents, my family, and

23  my friends than I have in these past two years.  They truly

24  saved me.  So thank you to all of them.

25      Excuse me.

1          It is unfortunate that this revelation about the true

2     strength of my support network was occasioned by a crime on my

3     part that will require me to leave them for years.

4          What is important to underscore here, Your Honor, is

5     that there is a community of loving people who will be

6     anxiously awaiting my release to help ensure that I emerge from

7     this to lead an upstanding life and that I never offend in any

8     manner again.

9          I highly request Your Honor's mercy in sentencing.  I

10    have been living in agony since the execution of the search

11    warrant, anticipating being wrested from my loved ones every

12    day, almost as if it's this Groundhog Day of being two weeks

13    away from prison for two years, just living two weeks at a

14    time, not knowing what's going to happen.

15         And all I want to do is get back to my family and start

16    rebuilding my life as soon as I possibly can.  I fear for my

17    very, very fragile mental health and the uncertain future that

18    awaits me.  I do know the offense will mark me for the rest of

19    my life and foreclose upon many opportunities that nonfelons

20    enjoy; but I fully understand why this must be the case, why I

21    must rightfully be punished for the suffering I perpetuated

22    against survivors of sexual assault.

23         Thank you, again, Your Honor.

24         And once more, my sincerest and deepest apologies to

25    everyone affected by my poor decisions.

1          THE COURT:  Thank you, Mr. Cooper.

2          The Court is ready to pronounce sentence in this case.

3          After calculating the sentencing guidelines and

4    departures and hearing the statements made by counsel and by

5    the defendant, the Court must now consider the relevant factors

6    set out by Congress in 18 U.S.C. §3553(a) in order to ensure

7    that it imposes a sentence that is sufficient but not greater

8    than necessary to comply with the purposes of sentencing.

9          These purposes include the need for the sentence imposed

10   to reflect the seriousness of the offense, to promote respect

11   for the law, and to provide just punishment for the offense.

12   The sentence should also deter criminal conduct, protect the

13   public from future crimes by a defendant, and promote

14   rehabilitation.

15         In addition to the guidelines and policy statements, the

16   Court must consider the nature and circumstances of the

17   offense, the history and characteristics of the defendant, the

18   types of sentences available, the need to avoid unwarranted

19   sentencing disparities among defendants with similar records

20   who have been found guilty of similar conduct, and the need to

21   provide restitution to any victims of an offense where

22   appropriate.

23         This Court has considered all of these factors when

24   deciding what the appropriate sentence is in this case, and in

25   accordance with my ordinary practice, I won't detail my

1    considerations with respect to each factor orally here this

2    afternoon.

3           But I do think it is important to make sure that the

4    Court says something for the record and for you, Mr. Cooper,

5    about the nature and circumstances of your offense, your

6    history and characteristics, and the need to avoid unwarranted

7    sentencing disparities.

8           With respect to the nature of the offense, I was

9    interested, very interested, in your statement because very

10   much in line with my considerations of similar defendants, I'm

11   always looking to make sure that defendants who have been

12   convicted of child pornography offenses realize and understand

13   that distribution of child pornography is an extremely serious

14   federal crime.

15          I read the letter that you wrote to the Court, and you

16   describe your conduct in that letter as, quote, loathsome,

17   end quote.  You also acknowledge that you perpetuated harm

18   against the children depicted in the material that you

19   possessed and distributed, and you've repeated those statements

20   here in your statement this afternoon.

21          I also know from the letters that I received from your

22   friends and family that you have explained to many of them why

23   your conduct is so reprehensible, and I don't doubt the

24   sincerity of your statements, the fact that you now understand

25   what it is that you've done.  But I just -- I just want to be

1    clear, for the record, because for people who aren't really

2    aware of this kind of criminal behavior, the idea that you

3    merely reblogged images on Tumblr, posting images that were

4    already there, as opposed to posting original content, may not

5    seem that serious.  So just in case -- just in case there's any

6    doubt, Mr. Cooper, I want to be crystal clear that the

7    distribution of child pornography is a heinous offense, whether

8    a defendant posts child pornography to a website in the first

9    instance, or whether the defendant shares and further

10   distributes child pornography that someone else has posted.

11       Either way, the crime involves taking pictures or videos

12   depicting real children while those children are being sexually

13   abused, and then putting those pictures on the internet for

14   other people to see.  According to the statement of offense,

15   your involvement with these images not only included sharing

16   approximately 45 pictures on the internet in the way that we've

17   been discussing, but it also appears that you yourself

18   possessed hundreds of images and videos, as Mr. Miranda

19   mentioned, of children in sexually compromised positions, and

20   some even included images involving children engaged in

21   sadomasochistic acts.

22       So as I mentioned, I always try to assess the extent to

23   which a defendant really understands, and I do believe that you

24   understand the seriousness of this conduct to some degree.  Let

25   me just -- let me just point out a couple of things.  I want to

1    make sure that you are aware that the children in those

2    pictures were not knowing and willing participants in the

3    degrading conduct that they -- that was depicted, but they were

4    being forced to commit unspeakable acts of sexual violence for

5    the pleasure of the person who was filming them, for the

6    gratification of sick people everywhere.

7         It's important that you understand that this is about

8    victimization of children.  And I don't know if you've ever

9    heard what this crime does to those victims.  I've heard those

10   stories, and I have to tell you, they are harrowing.  Some of

11   the children who you saw in those pictures will never have

12   normal adult relationships.  Some of them will turn to drugs

13   and prostitution and other dangerous conduct to try to deal

14   with the emotional pain that results from the torture that they

15   have experienced.

16        And even those who manage to lead a somewhat normal

17   adult life, sometimes say that they live in constant fear of

18   being recognized.  Some victims are unable to go outside of

19   their homes because once those pictures are put on the

20   internet, they are there forever.  And the people in them can't

21   do anything without worrying that every person that they meet

22   has seen them in their most vulnerable state at the most

23   horrible time in their lives.

24        Now, let me just say for the record that I realize that

25   there's nothing in this case that suggests that you had any

1    role in producing child pornography, but as you yourself

2    mentioned, that doesn't mean that this conduct isn't extremely

3    serious because the market for producing pictures of children

4    being molested and raped is driven by those who want to see

5    those pictures.  If the lookers weren't there, if the interest

6    wasn't there, then there would be fewer child victims; which is

7    why I believe that Congress was motivated to make distribution

8    of child pornography a federal offense, and why Congress has

9    required judges to impose a statutory minimum penalty when that

10   offense is charged.

11        So the question for the Court in this case becomes how

12   to assess the seriousness of the offense for the purpose of the

13   sentence to be imposed as § 3553(a) requires.

14        First, let me talk a little bit about my considerations,

15   as a general matter.  As you know, the sentencing guidelines

16   prescribe a much greater term of imprisonment than the 60-month

17   minimum term that appears in the applicable statute.  Your

18   counsel has suggested that I discount, substantially, the

19   guideline assessment.  This was in his sentencing memorandum

20   because the child pornography guideline is not the product of

21   the commission's empirical assessment and it includes and

22   emphasizes certain factors that have been widely criticized,

23   even by the Sentencing Commission itself.

24        I want you to know that this argument is made

25   consistently by defense counsel in these kinds of cases, and

1    there is an extent to which this Court agrees, and so I have

2    long considered it appropriate to make some adjustments to the

3    calculation as it relates to child pornography crimes.  I've

4    stated in similar cases, and I'll say here again, that the

5    guideline factors are in many ways outdated and, in general,

6    they no longer adequately distinguish between more serious and

7    less serious child pornography distribution offenses.

8         So, for example, the guidelines include a 2-level

9    increase for use of a computer.  And they also provide for a

10   substantial enhancement for the number of images that are

11   stored on the computer's hard drive.  Whatever the state of the

12   law and technology at the time that the guidelines were first

13   adopted, in my view, neither of these circumstances are really

14   aggravating factors today.

15        A computer is at work with respect to nearly all

16   distribution offenses now.  And it is so easy to receive and

17   possess and distribute child pornography electronically that

18   the number of images that -- and the use of an electronic

19   medium no longer signal an especially heinous or egregious

20   child pornography offense.  And so I've taken that into

21   account, and like many other federal judges who have analyzed

22   this issue, I have decided to apply my general policy

23   disagreement with respect to those two enhancements, at least

24   that is the computers and the number of images.  According to

25   the guideline calculation, there was a 2-level increase under

1    2G2.2(b)(6) for the computer, 5 levels for the images under

2    2G2.2(b)(7)(D).

3          And so consistent with my policy disagreement, I'm going

4    to exclude the 2 points for the computer use entirely, and I'm

5    going to impose only a slight increase, 2 levels, to account

6    for the size of your collection, rather than the 5 levels that

7    the guidelines prescribe.  And I'm going to vary from the

8    guideline range to this extent to start, which is 5 levels off.

9    And I think just in terms of thinking about this, keeping --

10   keeping track of where I am, that means that the appropriate

11   starting point from my assessment after this variance is at a

12   level -- offense level 29 rather than 34, which is carrying a

13   guideline range of 87 to 108 months at this point.

14         Now, I do recognize Mr. Miranda's statements about the

15   distinct periods of time, the nature of the porn involved, and

16   whether or not that should be weighted heavily in this

17   assessment.  I think that although there are two distinct

18   periods, as Mr. Miranda indicated, the defendant has pled

19   guilty to only one pursuant to the agreement of the parties and

20   the periods themselves, although distinct, happened within a

21   relatively short period of time over a single year.

22         So there's also evidence in the record that they may

23   well have been motivated by some mental health issues, which

24   we'll talk about in a moment.  So I don't know that I'm -- I

25   agree that those are particular -- that that's a particularly

1    aggravating factor.

2         And I'm really reluctant to get into the nature of the

3    porn.  I think that to a certain extent that's already been

4    taken into account in the guideline range, because there are

5    enhancements for things like sadomasochistic conduct.  And it's

6    very difficult to assess how different Mr. Cooper's images are

7    than those of other similarly situated child pornography

8    defendants such that I -- without going into looking at them.

9    I'm not an expert.  I don't know the difference, and the

10   guidelines really do that work in terms of determining what his

11   underlying guideline range is.  So while I understand

12   Mr. Miranda's arguments in that regard, I don't find them

13   persuasive from the standpoint of characterizing this as an

14   especially egregious child pornography offense.

15        Let me turn to the history and characteristics of

16   Mr. Cooper.  The probation office has found that you have no

17   prior criminal history, and that's actually not unusual for

18   this kind of crime.  I am also aware that you yourself are a

19   victim of sexual abuse, that you struggle as well with a number

20   of mental health conditions; some of which, it appears, may

21   have even contributed to your decision to look at child

22   pornography in the first place.

23        I will also note that you appear to have taken

24   substantial steps toward rehabilitation since the date of your

25   arrest.  You've been diligently pursuing mental health

1    treatment and sexual offender treatment.  You've been a

2    productive member of society by volunteering with local

3    organizations.  You've obtained gainful employment.  And -- and

4    this is crucial -- you have expressed deep remorse for your

5    actions.

6          These are all mitigating factors that the Court has

7    taken into account.  And I've also reviewed and considered the

8    unusual number of letters that have been submitted on your

9    behalf.  Mr. Jeffress, I think one more came in, so I have

10   43 letters in total.

11         MR. JEFFRESS:  Thank you.

12         THE COURT:  And, Mr. Cooper, you have indicated that

13   you now realize how much support you have, and I have to tell

14   you from my experience, that that is actually true.  I

15   appreciated getting the letters from your friends, from your

16   family; people who know a defendant can attest to their true

17   character, and your letters describe you, uniformly, as kind,

18   hard-working, dependable, loving.  I have no reason to doubt

19   those representations, and you should be very proud of having

20   such a large and caring group of friends and family members.

21   And you have apparently expressed your remorse to them, and

22   you've been open and honest about your behavior.  That's

23   important.

24         I hope that you will continue -- that you will continue

25   to be honest about your circumstances with these people moving

1    forward, because in addition to needing treatment, you're going

2    to need their help, not only during your period of

3    incarceration but afterwards when you return to the community.

4    There are going to be a lot of restrictions that the law places

5    on you because you are a convicted sex offender, and so you're

6    going to need the support of these people during this next

7    phase of your life and beyond.

8        Third, and finally, let me discuss the need to avoid

9    unwarranted sentencing disparities, which is a factor that is

10   often very important in my consideration as to how to sentence

11   a defendant.  I have done some research.  You heard the

12   attorneys on both sides talking about various cases.  I

13   notified the parties prior to this sentencing that I was

14   looking into relevant statistics regarding how other defendants

15   who have been convicted of distribution of child pornography

16   have been sentenced, particularly in cases involving defendants

17   with the same offense level and criminal history score under

18   the guidelines.

19       The same offense level and criminal history score is a

20   way in which to identify actually similarly situated

21   defendants.  I asked the United States Sentencing Commission to

22   provide that information, and that agency's data revealed,

23   first of all, that there are only four cases in the District of

24   Columbia in the years 2015 to 2019 that involve the same

25   guideline calculation, and only one of those defendants

1   received a sentence within the guideline range.  All of the

2   others received a sentence below the guideline range, with the

3   average sentence being 66 months and the median sentence being

4   60 months.

5        Meanwhile, when I looked at the national statistics for

6   similarly situated defendants, it appears that only 15 percent

7   of defendants received a sentence within the guideline range,

8   while the vast majority received a below-guideline sentence.

9        Among the defendants nationwide who received a

10  below-guideline sentence on the basis of a downward variance as

11  opposed to a departure, the average sentences ranged from 84 to

12  92 months, depending upon whether the government had moved for

13  a variance, while the median sentence ranged from 81 to

14  88 months.

15       In addition to considering the statistics from the

16  Sentencing Commission, I also find it very important to look at

17  my own prior cases when analyzing potential sentencing

18  disparities.  As Mr. Cooper's lawyers, Mr. Jeffress and others,

19  have noted in their sentencing memoranda, this case is quite

20  similar to that of Brian Hess.  He was a defendant that I

21  sentenced.  He had the same total offense level and criminal

22  history score as you do, Mr. Cooper, and he also pled guilty to

23  one count of distribution of child pornography.  In Mr. Hess's

24  case, I determined that a sentence within the guideline range

25  would be greater than necessary to comply with the purposes of

1    punishment, and I ultimately sentenced Mr. Hess to 60 months of

2    imprisonment and 120 months of supervised release.

3          Now, in that case, it's important to note that the

4    parties had agreed that a 60-month sentence was appropriate

5    when they negotiated their plea deal; that's what they

6    indicated and -- in their allocation statements before the

7    Court.  And that makes it somewhat different in this case

8    because the government here seeks a sentence higher than the

9    mandatory minimum.  Namely, 72 months.

10         But as I've already indicated, I don't find persuasive

11   the government's arguments concerning why they think that this

12   is a particularly egregious child pornography offense, which

13   means I struggled to find a good reason to impose a sentence

14   that is more severe in this case than I did in Mr. Hess's case,

15   especially when Mr. Hess's overall actions and activities were

16   more severe than Mr. Cooper's.  And you can pull the records in

17   that case, and I won't go into the reasons why, but there

18   were -- there were actions and activities on the part of the

19   defendant that were beyond just possession and distribution

20   and -- and the way in which they appear in this case.

21         Mr. Hess also lacked health-related mitigating

22   circumstances; the ones that Mr. Cooper clearly has.  So I

23   think that the need to avoid unwarranted sentencing

24   disparities, especially with respect to sentences that I have

25   imposed, supports the imposition of a sentence that is no

1    greater here than the one that the Court imposed in that prior

2    case.

3            Consequently, taking into account the statements of

4    counsel and the defendant, the letters submitted, the probation

5    office's recommendation, the nature of this crime, and all of

6    the other 3553(a) factors, I do believe that a penalty of

7    60 months of imprisonment is sufficient but not greater than

8    necessary to reflect the seriousness of the instant offense, to

9    promote deterrence, to protect the public from future crimes

10   that may be committed by this defendant, and to avoid

11   unwarranted disparities among defendants convicted of similar

12   crimes.

13           Consistent with the term of supervised release that I

14   have imposed on prior defendants, the Court will impose a

15   period of 120 months of supervised release to permit this

16   defendant to rehabilitate himself and integrate himself fully

17   back into society.

18           Therefore, based on this Court's considerations of all

19   of the 3553(a) factors, I will now state the sentence to be

20   imposed.

21           Mr. Cooper, it is the judgment of the Court that you,

22   Ryan Cooper, are hereby committed to the custody of the

23   Bureau of Prisons for a term of 60 months on Count 1.  You are

24   further sentenced to serve the term of 120 months of supervised

25   release on Count 1, and to pay a $100 special assessment.

1        The Court finds that you do not have the ability to pay

2     a fine and, therefore, waives imposition of a fine in this

3     case.  The special assessment is immediately payable to the

4     Clerk of the Court for the U.S. District Court for the District

5     of Columbia.  Within 30 days of any change of address, you

6     shall notify the Clerk of Court of that change until such time

7     as the financial obligation is paid in full.  The Court waives

8     any interest or penalties that may accrue on unpaid balances.

9        Within 72 hours of release from custody, you shall

10    report in person to the probation office in the district to

11    which you are released.  While on supervision, you shall submit

12    to the connection -- excuse me -- to the collection of DNA; you

13    shall not possess a firearm or other dangerous weapon; you

14    shall not use or possess an illegal controlled substance; and

15    you shall not commit another federal, state, or local crime.

16        You shall also abide by the general conditions of

17    supervision adopted by the U.S. Probation Office, as well as

18    the following special conditions, which I will state and then

19    describe the reasons for, as the D.C. Circuit requires.

20        Substance abuse testing.  You shall submit to substance

21    abuse testing as approved and directed by the probation office.

22    Given your history of drug use, this condition is the least

23    restrictive means necessary of ensuring that you remain

24    drug-free in the name of rehabilitation.

25        Mental health treatment.  You shall participate in a

1    mental health treatment program which may include outpatient

2    counseling or residential placement as approved and directed by

3    the probation office.  Given the connection between your mental

4    health issues and the crime for which you have been convicted,

5    this condition is the least restrictive means possible of

6    protecting the public from future offenses, deterring you from

7    committing future offenses, and ensuring that you remain in

8    good mental health in the name of rehabilitation.

9         Mental health medication.  You shall take all mental

10   health medications that are prescribed by your treating

11   physician.  Again, given the connection between your mental

12   health issues and the crime for which you have been convicted,

13   this condition is the least restrictive means possible of

14   protecting the public, deterring you, and ensuring that you

15   remain in good mental health.

16        Sex offender registration.  You shall comply with the

17   sex offender registration requirements of convicted sex

18   offenders in any state or jurisdiction where you reside, are

19   employed, carry on a vocation, or are a student.  Imposing

20   registration as a condition of supervised release is the least

21   restrictive means of protecting the public from further sex

22   crimes.

23        Contact restriction.  Your contact with minors will be

24   restricted during the period of supervision.  You shall have no

25   unsupervised contact with minors under the age of 18 of more

1    than momentary duration without the approval of your treatment

2    provider and the written consent of the U.S. Probation Office.

3    This restriction includes work in any facility for the care or

4    education of children and is the least restrictive means

5    necessary of protecting the public from future sex crimes

6    against minors, of deterring future offenses, and encouraging

7    registration.

8         Sex offender assessment and treatment.  You shall

9    participate in a program of sex offender assessment and

10   treatment as directed by the United States Probation Office.

11   At the direction of the United States Probation Office, you

12   shall pay for all or a portion of any treatment program.  You

13   shall waive your right of confidentiality in treatment and sign

14   any necessary releases for records imposed as a consequence of

15   this judgment to allow the United States Probation Office to

16   review your course of treatment and progress with treatment

17   providers.  This condition is imposed because it is the least

18   restrictive means of providing you with treatment to

19   rehabilitate yourself so that you can move forward from the

20   underlying offense, and it will also deter future conduct

21   involving sex offenses.

22        Computer/internet search monitoring.  You shall identify

23   all computer systems, internet-capable devices, and similar

24   memory and electronic devices to which you have access, and

25   permit the installation of a computer or internet-monitoring

1    program on any and all such devices.  Given that you initiated

2    and planned the offense -- conviction online via a computer,

3    and in light of your uncharged relevant conduct, which includes

4    possession of child pornography, this is the least restrictive

5    means of protecting the public from future offenses, deterring

6    you from committing future offenses, and aiding in treating

7    your correctional needs.

8         Finally, computer search.  You must submit your

9    computers as defined in 18 U.S.C. § 1030(e)(1) or other

10   electronic communications or storage devices or media to a

11   search.  You must warn any other people who use these computers

12   or devices capable of accessing the internet that the devices

13   may be subject to searches pursuant to this condition.  The

14   probation office -- officer may conduct a search pursuant to

15   this condition only when reasonable suspicion exists that there

16   is a violation of a condition of supervision and that the

17   computer or device contains evidence of this violation.  Any

18   search will be conducted at a reasonable time and in a

19   reasonable manner.

20        The Court finds that this condition is reasonably

21   related to the nature and circumstances of your offense, the

22   need to deter criminal conduct, protection of the public, and

23   treatment of your correctional needs because the nature of your

24   offense indicates some degree of risk of recidivism and because

25   any repeated criminal conduct of this nature could well be

1    carried out on your computer.

2         The probation office shall release the presentence

3    investigation report to all appropriate agencies in order to

4    execute the sentence of the Court.  Treatment agencies shall

5    return the presentence report to the probation office upon the

6    defendant's completion or termination from treatment.

7         Pursuant to your plea agreement, Mr. Cooper, and

8    Rule 32.2(a) of the Federal Rules of Criminal Procedure, you

9    are ordered to forfeit a silver Apple MacBook Pro as indicated

10   in your plea agreement.

11        Finally, Mr. Cooper, you have a right to appeal the

12   sentence imposed by this Court under the limited circumstances

13   laid out in your plea agreement.  If you choose to appeal, you

14   must file an appeal within 14 days after the Court enters

15   judgment.  If you are unable to afford the cost of an appeal,

16   you may request permission from the Court to file an appeal

17   without cost to you.

18        Let me ask counsel for both sides if there are any

19   objections to the sentence imposed that are not already noted

20   on the record.

21        Mr. Miranda?

22             MR. MIRANDA:  No, Your Honor.

23             THE COURT:  Mr. Jeffress?

24             MR. JEFFRESS:  No, Your Honor.  Thank you.

25             THE COURT:  Okay.  So that concludes the Court's

1    judgment in this case.

2         Let's turn to the matter of Mr. Cooper's surrender.  The

3    Court must now decide whether to have Mr. Cooper detained today

4    or to allow him to self-surrender to D.C. jail on the next

5    business day.  It is my understanding that the government and

6    the probation office do not object to self-surrender in this

7    case.

8         Can I just get confirmation of that position,

9    Mr. Miranda?

10        MR. MIRANDA:  Yes, Your Honor.  That is correct.

11        THE COURT:  Ms. Willett?

12        THE PROBATION OFFICER:  Yes, Your Honor.

13        THE COURT:  All right.  So we have no objection to

14   self-surrender.  And based on my discussions, Mr. Cooper, with

15   your counsel and with the government, both today and

16   previously, I will allow you to self-surrender.  You've been on

17   supervision.  You will continue under those conditions until it

18   is time for you to report to jail.

19        And given the circumstances, I will include in my

20   judgment that you shall be ordered to surrender no later than

21   4:00 p.m. on this coming Monday, which is Monday, May 3rd.  You

22   will go to the D.C. -- DOC Central Detention Facility, which is

23   located at 1901 D Street, Southeast.  I will post a

24   self-surrender order to ECF this afternoon.  That's our court

25   filing system.  And your lawyers will need to then print it out

1    and make sure that you have a paper copy of that order when you

2    self-surrender.  And when you report to jail, please be sure to

3    bring a copy of that order, your photo ID, and any necessary

4    medications.  Other than that, please do not bring any personal

5    property.  And you're going to report to the rear control tower

6    and inform DOC staff that you are there to self-surrender.

7         I am going to caution you now about your conduct while

8    you are still out on HISP, or high intensity supervision, prior

9    to your self-surrender.  We're only talking about a couple days

10   here, but you are required to follow the conditions of release

11   as they have applied to your case and as the pretrial service

12   office has directed and will continue to direct.

13        If you violate any of the conditions, an arrest warrant

14   may issue and you may be detained for failing to comply with

15   the conditions of release prior to your voluntary surrender

16   date.  Even more important, the penalties for failure to

17   surrender for service of the sentence in violation of 18 U.S.C.

18   3146(a)(2) are serious.  Such a violation is a separate offense

19   for which you could be sentenced to a fine or imprisonment of

20   up to 10 years or both.

21        Is that clear, Mr. Cooper?

22             THE DEFENDANT:  I needed to unmute myself.  Yes, it

23   is clear, Your Honor.  Thank you.

24             THE COURT:  All right.  Now, Mr. Jeffress, let me ask

25   you about ultimate recommendations for an incarceration

1    facility.  As you're aware, the Court does not control where

2    Mr. Cooper serves his time, but I can request in the order -- I

3    can say that we would recommend a certain facility.  So do you

4    have that information?

5              MR. JEFFRESS:  Yes, Your Honor.  I think what we're

6    told to do here is if the -- if Your Honor will do it, is

7    include a three -- three institutions in order of preference,

8    and Mr. Cooper has taken this very seriously and researched the

9    locations and also the availability of programming at these

10   places.

11         I think the number one recommendation for us would be

12   Fort -- I'm sorry.  Not Fort -- Devens in Massachusetts, which

13   has various programs and is only about -- I think it's a half

14   hour to 45 minutes from Mr. Cooper's parents' home in

15   New England -- in New Hampshire.  Number two would be

16   Petersburg, which I'm sure Your Honor is familiar with, in this

17   area.  And then the third choice would be Danbury,

18   D-a-n-b-u-r-y.  So that's --

19              THE COURT:  All right.

20              MR. JEFFRESS:  Your Honor, also, if it would be

21   possible, I think Your Honor referred to this, actually, in

22   Mr. Cooper's, you know, substance abuse and how that factored

23   into this case, and I think it's documented in the PSR, but

24   just so we can try to do everything we can, if Your Honor would

25   recommend in the judgment, the residential drug treatment

1       program, we would appreciate it.

2              THE COURT:  All right.  Let me ask Ms. Willett

3       whether probation believes that that recommendation is

4       justified based on her investigation of the facts and the PSR

5       in this case.

6              THE PROBATION OFFICER:  Yes, Your Honor.  I believe

7       that RDAP would be a beneficial program for Mr. Cooper.  I also

8       would suggest that the nonresidential sex offender treatment

9       program is also available at Devens.

10             THE COURT:  All right.  I will recommend in order of

11      preference:  Devens, Petersburg, and Danbury.  And RDAP and

12      nonresidential sex offender treatment program.

13             MR. JEFFRESS:  Your Honor, just one more thing, which

14      is:  Michael Cooper has been the custodian for Mr. Cooper's

15      electronics and so forth, and he's been going there to put the

16      computer back.  Mr. Cooper's lease is actually up this -- oh,

17      no -- this is -- is this an issue -- no, this is -- it's up

18      today.

19             THE DEFENDANT:  (Nods head.)

20             MR. JEFFRESS:  Okay.  Mr. Cooper can stay at

21      Michael Cooper's place, who is already -- the Court's already

22      familiar with him, and he's been attesting to Mr. Cooper's

23      surrender of electronics every night and so forth.  And

24      Mr. Cooper can stay with him until Monday, just so the --

25      everyone is on the same page about where he'll be.

1          THE COURT:  All right.  Ms. Willett, do you have any

2    objection to that?

3          THE PROBATION OFFICER:  No objections, Your Honor.

4    But we would like for Mr. Cooper to provide his address to the

5    probation office.

6          THE COURT:  Yes.  All right.  Provided that

7    Mr. Cooper is going to give the information for where he will

8    be residing between now and Monday, the Court will allow for

9    that -- I guess that's a change in the conditions of release.

10   And, again, Mr. Cooper, this is between now and Monday.  And,

11   as of Monday, you will need to self-surrender in the way in

12   which I have instructed.  Okay?

13         THE PROBATION OFFICER:  Your Honor, my apologies,

14   again.  Mr. Cooper should actually report that to the pretrial

15   office.  I believe he's still subject to location monitoring

16   requirements with their office.  So they'll need to know.

17         THE COURT:  Pretrial?

18         THE PROBATION OFFICER:  Yes.  Yes, Your Honor.

19         THE COURT:  Mr. Jeffress, you'll make sure that he's

20   getting that information to the right place.  It is pretrial,

21   since he just pled guilty and was convicted right now.  So he

22   is still under the conditions of pretrial --

23         MR. JEFFRESS:  Absolutely.

24         THE COURT:  -- between now and Monday.

25         MR. JEFFRESS:  Thank you.

1              THE COURT:  All right.  Is there anything else that

2      we need to address in this matter this afternoon?

3              MR. JEFFRESS:  No, Your Honor.  Thank you.

4              THE COURT:  Mr. Miranda?

5              MR. MIRANDA:  No, Your Honor.

6              THE COURT:  All right.

7          Mr. Cooper, I wish you the best of luck.  Thank you.

8              THE DEFENDANT:  Thank you, Your Honor.

9              (The proceedings concluded at 4:25 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1               CERTIFICATE OF OFFICIAL COURT REPORTER

2

3          I, Nancy J. Meyer, Registered Diplomate Reporter,

4     Certified Realtime Reporter, do hereby certify that the above

5     and foregoing constitutes a true and accurate transcript of my

6     stenograph notes and is a full, true, and complete transcript

7     of the proceedings to the best of my ability.

8

9                         Dated this 22nd day of March, 2022.

10

11                    /s/ Nancy J. Meyer
                      Nancy J. Meyer
12                    Official Court Reporter
                      Registered Diplomate Reporter
13                    Certified Realtime Reporter
                      333 Constitution Avenue Northwest
14                    Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25